1  PETER N. LAMBERTO, State Bar No. 061813
   LAMBERTO & KREGER
2  160 West Santa Clara, Suite 1050
   San Jose, CA 95113-2311
3  Telephone: (408) 999-0300
   Facsimile: (408) 999-0301
4
   Attorneys for Plaintiff LISAMARIE BRAYDEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| LISAMARIE BRAYDEN | Case No. C 07-04910 JF |
|---|---|
| Plaintiff, | **DECLARATION OF CLAIMANT IN SUPPORT OF REPLY TO OPPOSITION TO MOTION OF CLAIMANT TO REMAND TO SUPERIOR COURT OF MONTEREY COUNTY** |
| vs. | |
| PSC INDUSTRIAL OUTSOURCING, INC., MARK BLANCHARD, JOE HAMBY, BRUCE ROBINSON, AND DOES 1-50 AND DOES 1-50, | |
| Defendants. | Date: December 14, 2007<br>Time: 9 a.m.<br>Dept. 3<br>Hon. Jeremy Fogel |

I, LISAMARIE BRADEN, declare:

1. I am the Claimant in the above entitled matter, and the facts stated herein are true of my own personal knowledge, unless stated on information and belief, in which case I believe them to be true.

2. Between approximately March 1, 2007 and June 15, 2007, I was employed by defendant PSC Industrial Outsourcing, Inc. (hereafter PSC) at its facility located in San Ardo, County of Monterey, CA. My job was assistant to the Health and Safety Manager, who was defendant herein Mark Blanchard. Defendant Joe Hamby was the Site Manager, and the direct supervisor of Mark Blanchard.

1      3. I complained verbally and in writing to the Human Resources Manager,
2 Cheryl Sarzotti, on or about May 21 and May 22, 2007 of being sexually harassed
3 by my boss, Mark Blanchard, whom I have since learned is a convicted sex
4 offender in Louisiana.  The harassment consisted of pulling my shirt out at the
5 neck so he could look down at my breasts, and grabbing my buttocks, among
6 other offensive and inappropriate behavior.

7      4. After being placed on leave, during which an investigation was allegedly
8 conducted, I returned to work on or about June 4, 2007.  I was told that the
9 "investigation" did not support my complaints.

10      5. Within days thereafter, I was personally demoted by Site Manager Joe
11 Hamby to "yard duty," and I was told that I was not to work inside at my usual
12 desk.  Mr. Hamby refused to tell me what my new job description was, and
13 advised me that I was not to question him about it.

14      6. My previous job responsibility as Assistant to the Health and Safety
15 Manger included the testing and maintenance of safety equipment and supplies.
16 In early May 2007 I was promised a $2/hour raise because of my outstanding job
17 performance.  I was on 24 hour weekend call in cases of emergency, and I was
18 responsible for the maintenance of over forty safety training files.

19      7.  In my "new" job, I was instructed by Joe Hamby to clean the
20 warehouse and restack heavy materials, weighing over 100 lbs.  I was further
21 ordered by him to clean caustic chemicals from dumpsters, and I was specifically
22 denied  the use of safety equipment such as a hard hat, coveralls and goggles by
23 Joe Hamby, though other workers in the yard were issued safety equipment.
24 After performing these tasks and being covered with what I thought was caustic
25 soda ash, but which I later found out may have been vanadium pentoxidel, I was
26 chastised by a dispatcher, who said I should not be performing the tasks without
27 proper safety equipment, and I was sent home.
28 /////

1      8. On or about June 12, I noticed Joe Hamby and Mark Blanchard leave the work premises together in Mark Blanchard's truck.  I left for lunch about two hours later, and about one-half mile from the work premises, what sounded like a rifle shot shattered my driver's side window.  About twenty minutes later, Joe Hamby drove by in his own vehicle while I waited for the police, but did not bother to stop or even acknowledge me, though there was a large amount of glass in the street, and he certainly would recognize my vehicle stopped on the roadside.

    9. Within the next two days or so, fearing for my health and safety working in the yard under the supervision of Joe Hamby, I advised the company that I would not be returning to work.

    10. I am informed and believe that Joe Hamby's actions in reassigning me to yard duty and strenuous physical labor, under unsafe conditions, were in direct retaliation for my complaining about the sexual harassment of myself by his friend Mark Blanchard.  Prior to my complaint, I was lauded for my performance over the course of my first two months on the job.  I was advised by co-workers that assignment of persons complaining of sexual harassment to yard duty was a tactic employed by the company previously to force the harassed person to quit.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is made December 5, 2007 in Modesto, CA.

                                            __/S/ Lisa Marie Brayden_____
                                            LISAMARIE BRAYDEN

Dated:  Dec. 7, 2007                         /S/_____
                                            Peter Lamberto, Atty for Claimant

I hereby attest that I have on file all holographic signatures for any signatures indicated by a "conformed" signature (/S) written in this efiled document.